IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JOHN V. GROSS, JR.,

                Petitioner,

v.

DYLON RADTKE,

                Respondent.

OPINION and ORDER

21-cv-643-wmc

---

Petitioner John V. Gross, Jr. seeks relief under 28 U.S.C. § 2254, challenging his 2002 conviction for first-degree intentional homicide as a party to a crime. *See* Juneau County Case No. 2001CF89. After conducting a preliminary review of the pleadings under Rule 4 of the Rules Governing Section 2254 Cases, the court concluded that the petition was untimely and issued an order directing the petitioner to show cause why it should not be dismissed as barred by the governing one-year statute of limitations. (Dkt. #6.) The petitioner has filed a response. (Dkt. #7.) Rule 4 requires the court to examine the petition and supporting exhibits and to dismiss the petition if it "plainly appears" that the petitioner is not entitled to relief. After reviewing the petition, the brief in support, and the petitioner's response to the show cause order, the court concludes that the petitioner fails to show that he fits within an exception to the one-year statute of limitations found in 28 U.S.C. § 2244(d)(1) and will dismiss the petition for reasons explained below.

BACKGROUND

Gross was charged with first-degree intentional homicide as a party to a crime in the death of his girlfriend's three-year-old son, L.Z. *See State v. Gross*, 2020 WI App 47, ¶ 2, 393

Wis. 2d 595, 947 N.W.2d 648 (per curiam).[1] The evidence showed that L.Z. arrived at the hospital in traumatic shock due to multiple injuries to organs in his abdomen. *Id.* at ¶ 7. The treating physician, Dr. Timothy Corden, testified that the child's liver had been nearly split into two separate pieces and that this injury led to blood loss, which in turn caused him to suffer cardiac arrest, brain damage, and death. *Id.* The pathologist who performed the autopsy, Dr. Robert Huntington III, testified that L.Z. had bruises on his scalp, brain, liver, pancreas, stomach, lungs, groin, and testicles. *Id.* at ¶ 8. Both Dr. Corden and Dr. Huntington concluded that L.Z. had been the victim of child abuse and that his death was a homicide. *Id.* at ¶¶ 7-8.

In addition to the medical evidence, the State presented evidence showing that L.Z. had told at least three family members that Gross was abusing him and that L.Z. was in fear of Gross. *Id.* at ¶¶ 3-4. The State presented evidence that Gross had physically abused the sons of at least two of his former girlfriends. *Id.* at ¶ 11. Two inmates who were housed with Gross in jail testified that Gross admitted striking and kicking L.Z. *Id.* at ¶¶ 12-13.

Moreover, Gross's girlfriend, Amy Zietlow, was also charged in connection with L.Z.'s death, *id.* at ¶¶ 2, 11, and although she did not testify, a friend of hers testified that shortly before L.Z.'s death, Amy called her, told her that Gross had beaten her son, and repeated three times, "He killed my baby." *Id.* at ¶ 17. When interviewed by police, Amy also told a detective that she saw Gross hit L.Z. in the abdomen, which she said resulted in L.Z. going pale and becoming unconscious. *Id.* at ¶ 18.

---

[1] In addition to facts taken from the state court of appeals' decision, the facts in this section are also taken from the petition, petitioner's memorandum of law, the exhibits, and publicly available state court records. *See* Wisconsin Court System Case Search, https://wcca.wicourts.gov (last accessed July 16, 2024).

After a jury found Gross guilty as charged, the circuit court sentenced him to life in prison with eligibility for extended supervision following 50 years of initial confinement. *Id.* at ¶ 20. The circuit court also ordered Gross to pay restitution for L.Z.'s funeral expenses. *Id.*

Gross filed a direct appeal challenging the admission of other acts evidence. The court of appeals affirmed his conviction in an unpublished decision, *State v. Gross*, 2004 WI App 149, 275 Wis. 2d 877, and the Wisconsin Supreme Court denied his petition for review on September 1, 2004. *State v. Gross*, 2004 WI 138, 276 Wis. 2d 28. Gross unsuccessfully sought other postconviction relief in state circuit court in 2005, 2009, and 2012.

In 2016, Gross next filed a pro se motion for a new trial under Wis. Stat. § 974.06, and a year later he filed a pro se motion to vacate the restitution order that was entered by the circuit court in connection with his conviction. The circuit court appointed appellate counsel to assist Gross and denied both motions. Gross appealed, arguing that he had newly discovered evidence provided in a report from a forensic pathologist, who concluded that L.Z.'s death was not attributable to Shaken Baby Syndrome. Gross alternatively argued that: trial counsel was deficient for failing to consult a medical expert; he was entitled to a new trial in the interests of justice; and his restitution order should be vacated. The court of appeals rejected Gross's arguments, *see Gross*, 2020 WI App 47, ¶¶ 47-48, and the Wisconsin Supreme Court denied his petition for review on October 21, 2020. (Dkt. #1-2.)

Gross mailed his federal habeas petition to the court on October 12, 2021. (Dkt. #1-1.) In his petition, Gross renews his claims that he is entitled to a new trial based on newly discovered evidence in the form of his expert's report or, alternatively, because his trial counsel was deficient for failing to consult with or present a medical expert.

OPINION

A person seeking a writ of habeas corpus under 28 U.S.C. § 2254 must comply with the one-year statute of limitations imposed by 28 U.S.C. § 2244(d)(1). For challenges to a state court judgment of conviction, that limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Gross filed a direct appeal from his conviction, and the Wisconsin Supreme Court ultimately denied his petition for review on September 1, 2004. Thus, the one-year limitations period for Gross to seek federal habeas relief commenced 90 days later on November 30, 2004, and ended on November 30, 2005. *See Anderson v. Litscher*, 281 F.3d 672, 674-75 (7th Cir. 2002) (noting that the one-year statute of limitations does not begin to run under § 2244(d)(1)(A) until expiration of 90-day period in which prisoner could have filed a petition for writ of certiorari with United State Supreme Court). Accordingly, Gross's petition, which was not filed until October 12, 2021, is late by almost 16 years.

Although the time during which a properly filed state postconviction motion concerning the judgment or claim is pending may toll the limitation period under § 2244(d)(1), 28 U.S.C. § 2244(d)(2), Gross offers no evidence of the tolling of the November 30, 2005 filing deadline. In particular, while Gross filed a postconviction motion in 2005, which the circuit court summarily denied that same year, and he filed other post-conviction motions in 2009, 2012, and 2016, he does not establish that *any* of these proceedings operated to toll the limitations period under § 2244(d)(2) in a manner that would render his pending petition timely. *See De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) ("a state proceeding that does not begin until the federal year has expired is irrelevant").

4

Instead, Gross contends that his petition should be considered timely because it is based on newly discovered evidence. For claims involving newly discovered facts, the limitations period begins to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Gross explains that he did not become aware that he had a claim for ineffective assistance of counsel based on his trial attorney's failure to consult with or present expert testimony at Gross's trial in 2002, until another inmate shared a law review article with him in 2015 about Shaken Baby Syndrome. In support, Gross presents the law review article,[2] a state court appellate decision granting a new trial based on newly discovered expert medical testimony about Shaken Baby Syndrome,[3] and two additional articles about head injuries in children.[4]

Gross also presents an expert report from forensic pathologist Dr. George R. Nichols II, regarding the cause of L.Z.'s death. (Dkt. #7-5.) In this expert report, which is dated March 22, 2018, Dr. Nichols reviewed the existing evidence, specifically L.Z.'s medical records, the autopsy report, the autopsy photographs, a selection of autopsy slides, and the trial testimony of the State's medical experts, and observed that L.Z. did not suffer a brain injury caused by Shaken Baby Syndrome, which given the overwhelming evidence of the actual cause of L.Z.'s

---

[2] Comment, Molly Gena, *Shaken Baby Syndrome: Medical Uncertainty Casts Doubt on Convictions*, 2007 Wis. L. Rev. 701 (2007). (Dkt. #7-1.)

[3] *State v. Edmunds*, 2008 WI App 33, 308 Wis. 2d 374, 746 N.W.2d 590 . (Dkt. #7-2.)

[4] John Plunkett, *Fatal Pediatric Head Injuries Caused by Short-Distance Falls*, 22 Am. J. Forensic Med. & Pathology 1 (2001); Werner Goldsmith and John Plunkett, *A Biomechanical Analysis of the Causes of Traumatic Brain Injury in Infants and Children*, 25 Am. J. Forensic Med. & Pathology (2004). (Dkt. #7-3, #7-4.)

5

death is a painful non sequitur at best. (*Id*. at 1, 5.) Regardless, because the expert report relies on existing evidence, Gross does not show that Dr. Nichols' report constitutes newly discovered evidence, as opposed to a new evaluation of evidence that existed when Gross filed his direct appeal. *See Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (explaining that the time limitation for federal habeas review begins when petitioner knows, or through due diligence could discover, the important facts, not when petitioner recognizes the facts' legal significance). Because the information that Gross presents could have been discovered previously, he has not established that § 2244(d)(1)(D) even arguably applies or renders his petition timely.

Of course, there is an alternative equitable exception to untimeliness where a petitioner makes a credible claim of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013); *Arnold v. Dittmann*, 901 F.3d 830, 837 (7th Cir. 2018). However, equitable tolling is only available where a petitioner has been pursuing his rights diligently and some extraordinary circumstance prevented timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010). Here, Gross has not established a chronology showing that he pursued his claims with the requisite due diligence for purposes of equitable tolling. Further, his proposed new evidence fails to establish actual innocence under the applicable legal standard as discussed in more detail below.

"Actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To succeed, a petitioner must persuade the court "'that, in light of the new evidence, no juror, acting

6

reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Perkins*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). This is a demanding standard, which permits review only in an extraordinary case. *House v. Bell*, 547 U.S. 518, 538 (2006); *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014).

In this case, Gross's claim that newly discovered evidence established his actual innocence was already rejected by the state court of appeals, which summarized the evidence of abuse endured by L.Z. and the injuries that resulted in his death. *Gross*, 2020 WI App 47, ¶¶ 3-19. Unsurprisingly, the court of appeals considered the expert report from Dr. Nichols and concluded that Gross's claim failed because some of the so-called "new evidence was not material to an issue in the case, other evidence, even if material, was cumulative, and none of the new evidence create[d] a reasonable probability of a different result." *Id.*, ¶ 26. Specifically, the court of appeals found that Dr. Nichols agreed with the State that the cause of L.Z.'s death was homicide. *Id.*, ¶ 28. The court of appeals also found that Dr. Nichols agreed with testimony from the treating physician (Dr. Corden) and the pathologist (Dr. Huntington) about the level of force required to cause L.Z.'s abdominal injuries. *Id.*, ¶ 31. The court of appeals further found that Dr. Nichols's conclusions were cumulative of those from the treating physician about L.Z.'s cause of death, namely, that the laceration of L.Z.'s liver produced cardiac arrest and a lack of oxygen and blood to his brain, leading to severe brain damage and ultimately resulting in death. *Id.*, ¶ 36. Even more to the point, the court of appeals found that Dr. Nichols's report was irrelevant because the State did not present its case or argue to the jury that L.Z.'s injuries were caused by Shaken Baby Syndrome. *Id.*, ¶ 43.

7

Ultimately, therefore, the court of appeals found that the report from Dr. Nichols did not establish a reasonable probability of a different result because of the "overwhelming evidence" against Gross:

> For example, we note that, even with Nichols's report, the jury would still have heard the evidence summarized at length above: that [L.Z.] told multiple people that Gross was abusing him; that [L.Z.] was consistently afraid of Gross; that Gross had a history of abusing the young sons of his former girlfriends, demonstrating intent and absence of mistake or accident; that Gross changed his story to law enforcement about what had happened to [L.Z.]; and that Gross had told two inmates that he punched, struck, and kicked [L.Z.].

*Id.*, ¶ 47. Thus, the court of appeals rejected Gross's claim that he was entitled to a new trial based on newly discovered evidence and his claim that he was denied effective assistance of counsel based on that same evidence. *Id.*, ¶¶ 47-48.

Even if a different conclusion were arguable -- and it is not here -- a state court's findings of fact are entitled to deference when considering a habeas petitioner's claim of actual innocence and are presumed correct for purposes of federal habeas corpus review. 28 U.S.C. § 2254(e)(1) (On federal habeas review of a state conviction, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the applicant rebuts that presumption "by clear and convincing evidence."); *Araujo v. Chandler*, 435 F.3d 678, 682 (7th Cir. 2005). Moreover, were this court to consider the new evidence *de novo*, Gross still does not persuasively establish that "no reasonable juror would have convicted him in the light of the new evidence." *Perkins*, 569 U.S. at 399. On the contrary, the opposite is true. Therefore, the court concludes that Gross has not demonstrated a claim of actual innocence or that he is entitled to an equitable exception to the statute of limitations. Consequently, his petition is time-barred.

ORDER

IT IS ORDERED that:

1. The petition filed by John V. Gross (dkt. 1) is DISMISSED with prejudice as untimely.

2. A certificate of appealability is DENIED.

Entered this 22nd day of July, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge